EDWARD HART, Respondent, *v.* CITY THEATRES COMPANY, Appellant.

Contract — courts will not enforce contracts which will in effect abrogate statutes intended to promote public safety — a lease which involves a construction condemned by the Building Code of a municipality will be held void.

1. Courts will not be astute to sustain contracts when the effect will be to weaken the efficacy of laws and regulations designed for the protection of human life. Where a contract on its face, whether so intended by the parties or not, offends against statutes intended to promote public safety, the courts will not enforce it.

2. The Building Code of New York city has the force of a statute, and a covenant in a lease which necessarily involves a kind of construction condemned by the building laws has the effect of making the entire lease void.

*Hart* v. *City Theatres Co.*, 156 App. Div. 673, reversed.

(Argued May 10, 1915; decided June 15, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 8, 1913, upon an order reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term, and directed judgment in favor of plaintiff for the relief demanded in the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles L. Hoffman* and *Henry A. Friedman* for appellant. The privilege and license which the agreement in suit contemplated giving the defendant cannot be enforced without violating the law. Such agreement, therefore, is illegal and without consideration. (*Bridger v. Pierson,* 45 N. Y. 600; *Blackman v. Striker,* 142 N. Y. 555; *W. A. Segar Co. v. Salomon,* 109 App. Div. 65; 184 N. Y. 584; *Farley v. Scherno,* 208 N. Y. 269; *Burger v. Koelsch,* 77 Hun, 44; *Hess v. Allen,* 24 Misc. Rep. 393; *N. Y. Taxicab Co. v. Hawk,* 68 Misc. Rep. 555; *Seneca Bank v. Lamb,* 26 Barb. 595; *McClanathan v. Friedel,* 85 Hun, 175; *Peck v. Burr,* 10 N. Y. 294; *Tracy v. Talmadge,* 14 N. Y. 162; *Saratoga County Bank v. King,* 44 N. Y. 87; *Smith v. City of Albany,* 61 N. Y. 445; *Arnot v. P. & E. Coal Co.,* 68 N. Y. 558; *Materne v. Horwitz,* 101 N. Y. 469.) The question in this case is whether the existing contract could be legally performed, thus involving only the construction of the existing contract and not the making of a new contract between the parties. (12 Am. & Eng. Ency. of Law [2d ed.], 2; *Dwight v. G. L. Ins. Co.,* 103 N. Y. 347; *People v. Lee,* 104 N. Y. 441; *Stokes v. MacKay,* 147 N. Y. 223; *Shaw v. Republic Life Ins. Co.,* 69 N. Y. 286.) Both parties are bound by the prior rights of plaintiff's existing tenants. The agreement in suit expressly recognized those rights and the defendant took subject and subordinate thereto. (*Brendlin v. Beers,* 144 App. Div. 403; *Lawrence v. Dunham,* 58 Misc. Rep. 543; *Totten v. Phipps,* 52 N. Y. 354; *Doyle v. Lord,* 64 N. Y. 432; *Nicoll v. N. Y. & E. R. R. Co.,* 12 N. Y. 121.) If the agreement in suit can be construed as giving the defendant the exclusive right to use these stairways and to deprive the plaintiff's other tenants of their use, the fact that plaintiff had theretofore given to these tenants in possession, or that they had, a prior right to the use thereof constituted a complete defense to this action. (*Trull v. Granger,* 8 N. Y. 115; *Scriver v. Smith,* 100

N. Y. 471; *Edisheimer* v. *Quackenbush*, 68 Hun, 427; *Smith* v. *Barber*, 112 App. Div. 187; *Podalsky* v. *Ireland*, 137 App. Div. 257; *Eten* v. *Luyster*, 60 N. Y. 252; *Sullivan* v. *Schmitt*, 95 App. Div. 470; *Gallup* v. *Bernd*, 1 N. Y. Supp. 478; *Veit* v. *M'Causlan*, 157 App. Div. 335; *Crane* v. *Turner*, 67 N. Y. 437.)

*Walter J. Rosenstein* for respondent. A contract cannot be held to be unenforceable because illegal, when by its express terms it provides that all provisions of law affecting its performance must be complied with. (*Shedlinsky* v. *Budweiser Brewing Co.*, 163 N. Y. 437.) The mere fact that it was not contemplated by the parties to the contract that the defendant would have to perform as much work as it developed that it would have to do in order to comply with the law, furnishes no excuse to defendant to escape liability on the contract by the terms of which it had agreed to do all work necessary to comply with the law. (*Baker* v. *Johnson*, 42 N. Y. 126; *Beebe* v. *Johnson*, 19 Wend. 499; 9 Cyc. of Law & Pro. 625; *Davis* v. *Clark*, 159 N. Y. 392; *Harmony* v. *Bingham*, 12 N. Y. 99; *Cobb* v. *Harmon*, 23 N. Y. 148; *Wheeler* v. *Conn. Mut. L. I. Co.*, 82 N. Y. 543; *Nelson* v. *Odiorne*, 45 N. Y. 489; *Matthews* v. *Amer. Ins. Co.*, 154 N. Y. 463; *Dolan* v. *Rodgers*, 149 N. Y. 491; *Dermott* v. *Jones*, 2 Wall. 1.) Even if defendant's use of the stairways in conformity with law, would prohibit their use by plaintiff and his tenants, and thereby conflict with the provision of the agreement that defendant's user was to be in common with that of plaintiff and his tenants, such fact is not available as a defense. (*Craig* v. *Wells*, 11 N. Y. 321; *Hill* v. *Priestly*, 52 N. Y. 635.) Even if defendant could not obtain the benefits which it expected, by reason of certain provisions of law, the fault is defendant's and such fact furnishes no defense to this action. (*Marsh* v. *Johnston*, 125 App. Div. 597; *Adler* v. *Miles*, 126 N. Y. Supp. 135; *Kerley* v. *Mayer*, 10 Misc. Rep. 718.)

WERNER, J. The plaintiff is the lessee of premises on East Fourteenth street, in the borough of Manhattan, city of New York, and the defendant is the owner of a theatre building adjoining plaintiff's premises. On January 6th, 1910, the parties entered into an agreement in the form of a lease, by the terms of which the plaintiff, for a stipulated rental, gave to the defendant the right to construct a doorway through the rear wall at the third story of the plaintiff's building. This opening was designed to connect the gallery of the defendant's theatre with the hall and stairways of the plaintiff's building for the purpose of securing to the defendant an exit into Fourteenth street from its theatre.

After the contract had been entered into the defendant submitted plans to the building department of the city of New York for the work required to be done, which were disapproved by the authorities as being in violation of law. No efforts appear to have been thereafter made by the defendant to complete the contract on its part. The plaintiff brought this action to recover the sums which at that time had accrued under the stipulations of the contract.

After both parties had introduced their evidence the trial court dismissed the complaint on the merits, on the ground that the contract, fairly construed, was incapable of performance without violating the Building Code, and that it was, therefore, illegal and unenforceable. The plaintiff appealed to the Appellate Division, where a different view prevailed as to the interpretation of the agreement, and it was decided that performance of its terms did not necessarily involve a violation of any of the provisions of the Building Code. The judgment of the trial court was, therefore, reversed, and judgment directed in favor of the plaintiff. From that judgment the defendant has taken this appeal.

It is well settled that a plaintiff cannot recover if he is compelled to predicate his cause of action upon an illegal contract. (*Miller* v. *Ammon*, 145 U. S. 421, 426.) The

Building Code has all the force of a statute in the city of New York, and the plaintiff practically admits that if the work required to be done by the defendant in fulfillment of the terms of the contract would violate the provisions of that Code, the contract is illegal and will not be enforced by the courts. It is to be determined, therefore, whether the lease, under a fair and reasonable construction of its terms, in view of the surrounding circumstances disclosed by the evidence, contemplates such alterations of the plaintiff's building as would clearly constitute a violation of the provisions of the Building Code.

The structure of which the plaintiff is the lessee for a long term of years is five stories in height and fronts on the southerly side of Fourteenth street. The defendant's theatre adjoins it on the south and west. The main theatre building or auditorium adjoins the plaintiff's building on the south and the stage or rear end abuts on Thirteenth street. Extending northerly along the west side of the plaintiff's building is the foyer or entrance to the theatre from Fourteenth street. The stairway and hall in the plaintiff's building, the use of which was leased to the defendant, is located on the west side of the plaintiff's building, separated from the entrance part of the theatre by the westerly wall of plaintiff's building, and the purpose of the lease was to secure to the defendant a means of ingress and egress between its theatre gallery and Fourteenth street. The theatre building is of modern fireproof construction, while the plaintiff's building is over thirty years old and not fireproof. At the time when this lease was made the plaintiff's building was occupied by various tenants who were engaged in differing kinds of business in which inflammable materials were extensively used. These tenants used the stairway in question, and also another stairway on the east side of the building.

The lease recites at length the defendant's desire to cut an opening or doorway through the exterior westerly

wall of plaintiff's building for the purpose "of obtaining the right and privilege of using the westerly stairway," and it grants to the defendant the right " to cut through the westerly wall," and to use the said stairway as a means of ingress and egress to the theatre. It provides that this use is to be "in common with the party of the first part (the plaintiff) and the other tenants of said building," and that the defendant, before commencing the work of cutting through the doorway, shall submit plans thereof to the plaintiff, and have them approved by the building department.. The parties agreed that the defendant should submit for the approval of the plaintiff plans showing the manner of fireproofing the stairway, and that all the work should be done in compliance with the rules and regulations of the board of fire underwriters, the building department and all other municipal and state departments having any supervision in the matter. The work was all to be done at the expense of the defendant, and was thereafter to be maintained by it in compliance with the rules and regulations of the various city and state departments. The defendant further agreed "not to interfere with or cause to be interfered with," the plaintiff's tenants, and at the termination of the lease, upon the request of the plaintiff, to restore the wall and stairway to the condition in which it was at the time of the making of the agreement.

The principal pertinent provision of the Building Code is section 109, relating to the construction of theatre buildings. It provides that "No portion of any building hereafter erected or altered, used or intended to be used for theatrical or other purposes as in this section specified, shall be occupied or used as a * * * workshop or manufactory. * * * Said restriction relates not only to that portion of the building which contains the auditorium and the stage, but applies also to the entire structure used in conjunction therewith." With reference to the walls of staircases the section provides: " All stair-

cases for the use of the audience shall be inclosed with walls of brick or of fireproof materials approved by the Department of Buildings, in the stories through which they pass, and the openings of said staircases from each tier shall be full width of such staircase.  *  *  *  All stairs within the building shall be constructed of fireproof material throughout.  *  *  *  All inside stairways leading to the upper galleries of the auditorium shall be inclosed on both sides with walls of fireproof material. *  *  *  But in no case shall stairs leading to any gallery be left open on both sides."

· The plans and specifications prepared and submitted by the defendant in attempted compliance with the lease provided that the treads and risers of the first flight of stairs on the first floor should be covered with slate, the stairs themselves being of wood, and the remaining part of· the stairs should be constructed anew of fireproof materials.    They also provided that the entire staircase was to be inclosed with sheet metal on side walls and ceilings.    These plans were disapproved by the building department.·

. Thus it appears that the plans and specifications prepared and submitted by the defendant contemplated a mode of construction which was in violation of the Building Code, and that the terms of the lease cannot be observed without such violation.    This will be made even more plain by a closer view of some of the provisions of the lease and the Building Code.

The lease provides that the stairway shall be so constructed that it can be used by the tenants in the plaintiff's building.    In order to comply with this provision, openings into the staircase will have to be maintained on each floor, for the lease also provides that the tenants' rights shall not be interfered with.    The Building Code provisions which have been quoted require all stairways leading to the upper galleries of a theatre auditorium to be inclosed on both sides with walls of fireproof materials.

The reason is obvious. Doors leading into such a stair-
case from a building where inflammable material is
stored in great quantities will greatly endanger the safety
of the patrons of the upper gallery of a theatre. Such a
plan of construction is plainly a violation of both the
spirit and letter of the Building Code. If a doorway is to
be cut through the westerly wall of the plaintiff's build-
ing, and if openings are also to be left in the opposite side
of the staircase for the use of the plaintiff's tenants, there
will be a violation of that provision of the Building Code
which directs that in "no case shall stairs leading to any
gallery be left open on both sides." In short, it seems to
be literally impossible for the parties to observe the
conditions of this lease without violating the law.

The learned counsel for the plaintiff, recognizing the
difficulties of his position, contends that the provisions of
the lease designed to preserve the rights of the plaintiff's
tenants to the common use of the stairway were made
for the plaintiff's benefit and can be waived. Arguing
from this assumption counsel asserts that the duty rested
upon the defendant, after its original plans were rejected,
to submit others, even if they should prove to be contrary
to the provisions of the lease. As to this argument it is
enough to say that there was no proof that the tenants
had consented to any curtailment of their rights, or that
the plaintiff had waived anything to which he was enti-
tled. In these circumstances the defendant was not
required to assume that the plaintiff and his tenants would
not insist upon compliance with the terms of the lease.

Counsel for the plaintiff also asserts that this mooted
provision of the lease was in the nature of an exception
to the grant, and that an exception which is repugnant
to a grant is void. We do not think it is an exception to
the grant, but even if it were, it is not repugnant to the
grant of the easement. Construing the whole agreement
according to the intent of the parties, as we must (Real
Property Law, section 240), it was merely a collateral

covenant which the defendant was bound to observe, and its observance will have the effect of making the entire lease void, because it necessarily involves a kind of construction condemned by the building laws. Courts will not be astute to sustain contracts when the effect will be to weaken the efficacy of laws and regulations designed for the protection of human life. Where a contract on its face, whether so intended by the parties or not, offends against statutes intended to promote public safety, the courts will not enforce it.

The judgment of the Appellate Division should, therefore, be reversed, and that of the Trial Term affirmed, with costs in both courts.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur; SEABURY, J., taking no part.

Judgment reversed, etc.